UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| BEVERLY TABERA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 6:13-cv-02053-SGC |
| ) | |
| SOCIAL SECURITY ADMINISTRATION, ) | |
| COMMISSIONER, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

The plaintiff, Beverly Tabera, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").  Ms. Tabera timely pursued and exhausted her administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).  The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).  (Doc. 18).

I.   FACTS, FRAMEWORK, AND PROCEDURAL HISTORY

Ms. Tabera was born in 1974 and has an eleventh grade education.  (R. 41).  Her past work experience includes employment as a molder.  (R. 24, 41).  Ms. Tabera alleged she became unable to work on August 15, 2007, due to neuropathy, diabetes, asthma, obesity, bone spurs, scoliosis, post-traumatic stress disorder ("PTSD"), depression, anxiety disorder, high blood pressure, and high cholesterol.  (R. 144).

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920; *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001).  The first step requires a determination

of whether the claimant is performing "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i). If the claimant is engaged in substantial gainful activity, he or she is not disabled and the evaluation stops. *Id*. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to consider the combined effects of all the claimant's physical and mental impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found disabled. *Id*. The decision depends on the medical evidence in the record. *See Hart v. Finch,* 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, at which the Commissioner determines whether the claimant's impairments meet the severity of an impairment listed in 20 C.F.R. §§ pt. 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairments fall within this category, the claimant will be found disabled without further consideration. *Id.* If the impairments do not fall within the listings, the Commissioner determines the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e).

At step four the Commissioner determines whether the impairments prevent the claimant from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, he or she is not disabled and the evaluation stops. *Id.* If the claimant cannot perform past relevant work, the analysis proceeds to the fifth step, at which the Commissioner considers the claimant's RFC, as well as the claimant's age, education, and past work experience to determine whether he or she can perform other work. *Id.*; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can do other work, he or she is not disabled. *Id.*

Applying the sequential evaluation process, the Administrative Law Judge ("ALJ") found Ms. Tabera had not engaged in substantial gainful activity since the alleged onset of her disability. (R. 16). At step two, the ALJ found Ms. Tabera suffered from the following severe impairments: (1) obesity; (2) degenerative disk disease of the cervical, lumbar, and thoracic spine with radiculopathy; (3) diabetes mellitus; (4) bilateral carpal tunnel syndrome; (5) hypertension; and (6) chronic obstructive pulmonary disease ("COPD"). (R. 15). However, the ALJ found Ms. Tabera's other impairments—depression, left ankle pain, left knee pain, left should injury, incontinence, and a history kidney stones—did not constitute severe impairments. (R. 16-18).

At step three, the ALJ found Ms. Tabera did not suffer from an impairment or combination of impairments meeting or medically equal to any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 19-20). Before proceeding to step four, the ALJ determined Ms. Tabera retained the RFC to perform light work with the following restrictions: (1) only occasional climbing ramps and stairs; (2) only occasional balancing, stooping, kneeling, crouching, and crawling; (3) never climbing ladders, ropes, or scaffolds; (4) no more than frequent gross and fine manipulation bilaterally; (5) limited exposure to extreme temperatures, humidity, fumes, odors, dust, gases, and chemicals; (6) no exposure to hazardous or moving machinery; and (7) no exposure to unprotected heights. (R. 20). In reaching this conclusion, the ALJ considered Ms. Tabera's allegations, the medical record, and opinion evidence. (R. 20-23). The ALJ concluded that, while Ms. Tabera's medically determinable impairments could reasonably be expected to cause some of the symptoms alleged, her testimony concerning the severity, persistence, and effects of these symptoms was not entirely credible in light of the record. (R. 21).

At step four, the ALJ determined Ms. Tabera was unable to perform any of her past relevant work. (R. 23). At step five, the ALJ found Ms. Tabera could perform other jobs existing in significant numbers in the national economy, including work as a house cleaner, sorter, and fast food worker. (R. 24). In reaching this conclusion, the ALJ relied on the testimony of a vocational expert regarding the effects of the limitations imposed by Ms. Tabera's RFC. (*Id.*). Accordingly, the ALJ concluded Ms. Tabera had not been disabled since the alleged onset date. (*Id.* at 25).

Ms. Tabera appealed to this court on November 11, 2013. (Doc. 1). Ms. Tabera filed a brief in support of her appeal (Doc. 13), and the Commissioner responded (Doc. 15). All deadlines for submitting briefs have passed, and this matter is ripe for adjudication.

## II.  Standard of Review

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of review is limited to determining: (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner; and (2) whether the correct legal standards were applied. *See Richardson v. Perales,* 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The court approaches the factual findings of the Commissioner with deference but applies close scrutiny to the legal conclusions. *See Miles v. Chater,* 84 F.3d 1397, 1400 (11th Cir. 1996). The court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen,* 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n,* 383

U.S. 607, 620 (1966)).  Indeed, even if the court finds the evidence preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles,* 84 F.3d at 1400.  No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached."  *Bridges v. Bowen,* 815 F.2d 622, 624 (11tj Cir. 1987).  Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler,* 748 F.2d 629, 635 (11th Cir. 1984).

**III.   Discussion**

Ms. Tabera contends the ALJ's decision should be reversed and remanded because he erred in finding Ms. Tabera's testimony regarding the severity of her symptoms to be less than fully credible.  Ms. Tabera claims the ALJ's finding regarding credibility is contradicted by objective medical evidence.  Specifically, Ms. Tabera contends the ALJ failed to address the findings contained in the consultative examination performed by Dr. Boyde J. Harrison, M.D., on September 13, 2010.  (Doc. 13 at 15-16).  Accordingly, Ms. Tabera contends the ALJ did not bridge the logical divide between the objective medical evidence and the finding that her testimony was not credible.  (*Id.* at 16-20).

Dr. Harrison's consultative examination revealed Ms. Tabera: (1) had normal range of motion in the shoulders, elbows, and wrists; (2) could anteriorly flex to seventy degrees; (3) could squat "only half way down;" (4) had normal range of motion of the hips, knees, and ankles; (5) exhibited "mild crepitation" in both knees; (6) exhibited lumbar spine extension reduced to ten degrees and side bending limited to around fifteen degrees; and (7) had cervical radicular pain reproduced with side bending and neck rotation and resulting in spasms.  (R. 318). Dr. Harrison concluded the consultative examination by opining that, while Ms. Tabera could not

return to her previous job, "she might be able to go to work in a manufacturing facility" with appropriate training. (*Id.*). Ms. Tabera contends Dr. Harrison's objective findings are inconsistent with the ALJ's findings that she: (1) had a normal range of motion in her extremities with no tenderness; (2) had release of both wrists due to carpal tunnel syndrome; and (3) had normal x-rays of her lumbar spine. (Doc. 13 at 15-16).

As an initial matter, the ALJ did address Dr. Harrison's consultative examination and the accompanying objective medical evidence. (R. 22). Moreover, to the extent Ms. Tabera cites inconsistencies between the ALJ's opinion and Dr. Harrison's examination, her reference to the ALJ's "findings" appears to be a slight mischaracterization. To the extent Ms. Tabera relies on the portion of the ALJ's decision stating her extremities showed a normal range of motion with no tenderness, the ALJ was accurately citing the medical records from a previous emergency room visit. (R. 21, 230). To the extent Ms. Tabera relies on the portion of the ALJ's decision stating she underwent release of both wrists, the ALJ was accurately citing the medical records from Dr. Johnny Mitias, M.D., who performed the procedures to relieve her carpal tunnel syndrome. (R. 21, 433). To the extent Ms. Tabera relies on the portion of the ALJ's decision stating x-rays of Ms. Tabera's lumbar spine were normal, a full recitation of the ALJ's decision is that "other than mild facet arthropathy, the results were normal." (R. 22). Moreover, in making this statement, the ALJ was accurately citing the medical records from Ms. Tabera's August 23, 2011 exam performed by Dr. Kimberly L. Balasky, MD. (R. 22; 455). Accordingly, the foregoing portions of the ALJ's decision are merely accurate recitations of the medical evidence of record.

Turning to the substantive argument, Ms. Tabera contends the ALJ improperly discounted her testimony regarding the severity of her symptoms because he did not "set forth

explicit, specific, and cogent reasons" for doing so.  (Doc. 13 at 14).  Subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence.  *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995).  To establish disability based upon pain and other subjective symptoms, "[t]he pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain."  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)); *see also Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986).

An ALJ may discredit a claimant's subjective testimony of pain and other symptoms if he articulates explicit and adequate reasons for doing so.  *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see also* Soc. Sec. Rul. 96-7p, 1996 WL 374186 (1996) ("[T]he adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements.").  Although the Eleventh Circuit does not require explicit findings as to credibility, "the implication must be obvious to the reviewing court."  *Dyer*, 395 F.3d at 1210 (quoting *Foote*, 67 F.3d at 1562).  "[P]articular phrases or formulations" are not required, but the ALJ's credibility determination cannot be a "broad rejection which is not enough to enable the district court or this Court to conclude that the ALJ considered her medical condition as a whole."  *Id*. (internal quotations and punctuation omitted).

Ms. Tabera's degenerative disc disease satisfies the "underlying medical condition" requirement of the pain standard.  However, after reviewing the evidence, the ALJ determined

Ms. Tabera's testimony regarding her symptoms was not entirely credible and was unsupported by the objective medical record. (R. 22). Moreover, the ALJ articulated explicit reasons for making this credibility determination. Specifically, the ALJ found that the objective medical evidence confirmed some changes to Ms. Tabera's cervical, thoracic, and lumbar spine. However, he found that the objective evidence did not include findings to support the severity of the symptoms alleged. (R. 22). Additionally, the ALJ found Ms. Tabera's testimony regarding her symptoms was undermined by her reports and testimony that she: (1) was able to attend to personal her needs; (2) spent one to two hours per day cooking; (3) did laundry and light cleaning every day; (4) was raising two children; and (5) spent time reading, watching television, performing household chores, helping her children with homework, and communicating with family on Facebook. (R. 22). In light of these statements and testimony, the ALJ found Ms. Tabera's allegations of pain and physical limitations were greater than those supported by the objective medical record. (*Id.*). Accordingly, the ALJ found Ms. Tabera's testimony was not fully credible. (*Id.*).

"[C]redibility determinations are the province of the ALJ." *Moore v. Barnhart*, 405 F.3d at 1212. If the ALJ "articulate[s] explicit and adequate reasons" for discrediting Plaintiff's testimony, he does not have to accept its accuracy. *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991). Here, the ALJ satisfactorily explained why Ms. Tabera's testimony was not entirely credible. This court can reverse such credibility determinations only when substantial evidence does not support the ALJ's position or when the ALJ applied incorrect legal standards. Neither case is present here, and the ALJ's credibility determination does not warrant reversal.

## IV. Conclusion

Upon review of the administrative record, and considering all of Ms. Tabera's arguments, the court finds the Commissioner's decision is supported by substantial evidence and is in accord with the applicable law.

A separate order will be entered.

**DONE** this 22nd day of September, 2015.

                                                                      /s/ Staci G. Cornelius
                                                                      STACI G. CORNELIUS
                                                                      U.S. MAGISTRATE JUDGE